UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DIESEL S.P.A.*,*

              Plaintiff,                        14-CV-4592 (KMW)
                                                            **OPINION AND ORDER**

         v.

JOHN DOES 1-9,

              Defendants.
-------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

      Plaintiff Diesel S.p.A. ("Diesel" or "Plaintiff"), an Italian corporation, brings this action

against Defendants John Does 1-9. Plaintiff asserts claims for trademark infringement,

counterfeiting, dilution, and false designation of origin under the Lanham Act, 15 U.S.C. §§

1114, 1125(a), 1125(c); cybersquatting under the Anticybersquatting Consumer Protection Act,

15 U.S.C. § 1125(d)(1); and trademark infringement and dilution, unfair competition, and

deceptive acts and practices under N.Y. General Business Law §§ 349, 350, 360-1 and the

common law of the State of New York. Defendants have failed to answer or otherwise to appear

in this action. Plaintiff now moves for entry of default judgment against Defendants and seeks a

permanent injunction pursuant to 15 U.S.C. § 1116; an order requiring destruction of all

infringing goods and advertisements pursuant to 15 U.S.C. § 1118; and statutory damages,

attorney's fees, and costs, pursuant to 15 U.S.C. § 1117.

      For the reasons set forth below, the Court DENIES Plaintiff's motion for entry of default

judgment with respect to its claim of deceptive acts and practices under New York General

Business Law, §§349-350, and the Court GRANTS Plaintiff's motion for entry of default

judgment with respect to all other claims in the Complaint. The Court further GRANTS

Plaintiff's request for a permanent injunction as set forth below and awards Plaintiff $2 million as a combined award encompassing statutory damages, attorney's fees, and costs.

## I.     BACKGROUND

The following summary is drawn from Plaintiff's Complaint, [Doc. No. 1], motion for default judgment, [Doc. No. 19], and the exhibits and declarations attached thereto. Because Defendants have failed to appear in this action, they are deemed to have admitted all well-pleaded allegations in the Complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Plaintiff Diesel is an Italian corporation that sells men's and women's clothing, shoes, and accessories both online, through authorized websites, and in retail stores, including its flagship location in New York City. (Compl. ¶¶ 2-3). Over the past 25 years, Plaintiff has developed an international reputation for offering high-end fashion items and accessories. *Id.* ¶¶ 2, 14.

Diesel has registered a number of trademarks, *see id.* ¶ 10, in connection with apparel and footwear, textile fabrics, handbags and luggage, watches and jewelry, eyewear and sunglasses, personal care products, retail department store services, and online retail services. *Id.* at Ex. 1. These first of these registrations was filed in 1988, and additional marks have been registered since that time. *Id.* ¶ 10. Over the past 25 years, these trademarks have become recognized as source identifiers for high-quality Diesel products. *Id.* ¶ 14; (Mem. of Law in Supp. Mot. for Entry of Default Against All Defs. ("Mot. for Default"), 8 [Doc. No. 19]).

Defendants are unidentified John Does who operate a network of websites (the "Infringing Websites") that sell counterfeit products—including jeans, shirts, shoes, belts, and other apparel and accessories—that are designed to resemble authentic Diesel merchandise and

that feature many of Plaintiff's registered trademarks. (Compl. ¶ 5). Defendants are the

registrants, creators, and/or operators of the Infringing Websites, but, at this time, the identities,

names, addresses, and telephone numbers of Defendants are unknown. *Id.* ¶¶ 19-36. Defendants

have no affiliation with Plaintiff and have not sought or obtained permission to use any of

Plaintiff's trademarks. *Id.* ¶¶ 18, 37, 50.

      The web addresses used by Defendants all incorporate the "DIESEL" word mark into the

website domain names, for example, "buydieseljeansonline.net"; "bestdieseljeanssale.com"; and

"dieseljeansoutletcheap.com." *Id.* ¶¶ 4, 18-36. Plaintiff alleges that the Infringing Websites are

deliberately designed to create the false impression that they are authorized retailers of Diesel

goods and are selling authentic Diesel merchandise. *Id.* ¶¶ 4, 40. Defendants have used Diesel's

trademarks, logos, and advertising images throughout the Infringing Websites in order to mimic

authentic Diesel online retail sites. *Id.* ¶¶ 40, 42; (Mot. for Default, 2). Plaintiff also alleges that

the network of Infringing Websites has been designed to evade detection by frequently cycling

between different domain names that are variously active or inactive, and by frequently

redirecting customers to different, new infringing domains. (Compl. ¶ 44).

      In the spring of 2014, Plaintiff undertook an investigation into websites selling

counterfeit versions of Diesel merchandise. *Id.* ¶ 43. Upon confirming that the goods offered for

sale from certain Infringing Websites were indeed counterfeit, Diesel hired OpSec Security, a

company specializing in online anti-counterfeiting, to identify additional Infringing Websites

that were part of the Defendants' network and, if possible, to identify the persons responsible for

running them. *Id.* ¶ 17.

      Diesel commenced this action on June 24, 2014. [Doc. No. 1]. Diesel served Defendants

with a summons via email, (Mot. for Default, 1), pursuant to this Court's October 17, 2014 Order

permitting email service on the unidentified John Doe Defendants. [Doc. No. 11]. Defendants have not filed an answer or otherwise appeared in this action. The Clerk of the Court entered a default against all nine John Doe Defendants on May 12, 2015.

## II.   DISCUSSION

"[A] party's default is deemed to constitute a concession of all well-pleaded allegations of liability." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "However, a district court need not concur that the alleged facts in the complaint constitute a valid cause of action and must evaluate whether the allegations in the complaint are sufficient to establish liability." *Rolex Watch U.S.A. v. Rolex Deli Corp.*, No. 11 Civ. 9321, 2012 WL 5177517, at *1 (S.D.N.Y. Oct. 18, 2012) (Jones, J.). "Accordingly, the Court must determine whether the well-pleaded allegations in the Complaint, admitted by Defendants on this motion, are sufficient to establish liability for the claimed causes of action." *Id.*

Plaintiff here asserts claims for trademark infringement, counterfeiting, dilution, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c); cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1); and trademark infringement and dilution, unfair competition, and deceptive acts and practices under N.Y. General Business Law §§ 349, 350, 360-1 and the common law of the state of New York.

### A.   Liability

#### 1.   Lanham Act Claims

##### a.   *Trademark Infringement, Trademark Counterfeiting, and False Designation of Origin*

Both counterfeiting and infringement of registered trademarks are governed by Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), which prohibits any person from using in commerce

without consent of the registrant a reproduction or counterfeit of a registered mark when "such use is likely to cause confusion, or to cause mistake, or to deceive." Thus, in order to prevail on its claims of federal trademark counterfeiting and infringement, Plaintiff must demonstrate (1) that it owns a valid, protectable trademark; (2) that the Defendants used the trademark in commerce in connection with the sale of goods or services and without Plaintiff's consent; and (3) that there was a likelihood of consumer confusion. *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406 (2d Cir. 2005); *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390 (2d Cir. 1995).

False designation of origin is governed by Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This section prohibits the use in commerce without consent of "any word, term, name, symbol, or device, . . . or any false designation of origin" that is "likely to cause confusion . . . as to the origin, sponsorship, or approval" of goods or services. 15 U.S.C. § 1125(a)(1). In order to prevail on a claim under this section, Plaintiff must demonstrate essentially the same elements as are required for an infringement claim, namely (1) that it owns a protectable trademark;[1] (2) that Defendants used the mark in commerce without consent; and (3) that the use of the mark is likely to confuse consumers as to the source or sponsorship of the product. *See 1-800 Contacts*, 414 F.3d at 407.

Plaintiff alleges facts in its Complaint sufficient to establish liability for trademark infringement and counterfeiting under Section 32 of the Lanham Act, and for false designation of origin under Section 43(a) of the Lanham Act.

---

[1] Unlike Section 32, Section 43(a) of the Lanham Act applies both to registered and unregistered trademarks. *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 212 (2d Cir. 1985). Therefore, in bringing a claim under Section 43(a), a plaintiff does not need to demonstrate that his or her mark is registered, but merely that it is protectable.

### i.   Valid and Protectable Trademark

First, Plaintiff has shown that it is the registrant and/or owner of at least 14 valid trademarks registered in connection with the sale of apparel, footwear and accessories, handbags and luggage, and personal care items, among others. (Compl. ¶ 10; Ex. 1).[2] Registration is prima facie evidence of a trademark's validity.[3] 15 U.S.C. § 1057(b); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2d Cir. 1976).

### ii.   Use in Commerce without Consent

Second, the allegations in the Complaint sufficiently establish that Defendants used Diesel's trademarks (1) in commerce in connection with the sale of goods or services, and (2) without Diesel's consent. Diesel alleges that Defendants incorporated the Diesel word mark into the domain names of all the Infringing Websites, (Mot. for Default, 2), and displayed Diesel's registered marks both on the Infringing Websites and on the counterfeit merchandise offered for sale on those websites. (Compl. ¶¶ 4-5, 37-43). Plaintiff states that it has never authorized Defendants to use any of its registered marks. *Id.* ¶¶ 49, 62.

### iii.   Likelihood of Consumer Confusion.

Finally, Plaintiff's allegations demonstrate a likelihood of consumer confusion resulting from Defendants' behavior. In assessing the likelihood of consumer confusion, courts in this Circuit must weigh the eight factors laid out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). *See Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d 485, 493 (S.D.N.Y. 2015) (Preska, J.). The nonexclusive list of factors is:

---

[2] The registration numbers for these marks are: U.S. Reg. No. 3838753, U.S. Reg. No. 3596724, U.S. Reg. No. 3933720, U.S. Reg. No. 4268431, U.S. Reg. No. 4268432, U.S. Reg. No. 3225322, U.S. Reg. No. 3524221, U.S. Reg. No. 2376399, U.S. Reg. No. 2361005, U.S. Reg. No. 1989390, U.S. Reg. No. 1939141, U.S. Reg. No. 1564710, U.S. Reg. No. 1605656, and U.S. Reg. No. 1498698. (Compl. ¶ 10; *id.* at Ex. 1)

[3] A trademark is protectable if it is valid. *See C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp.2d 223, 239 (S.D.N.Y. 2013) (Sullivan, J.).

> (1) the strength of the plaintiff's mark; (2) the degree of similarity between the
> two marks; (3) the competitive proximity of the products or services; (4) the
> existence of actual confusion; (5) the likelihood that the plaintiff will "bridge the
> gap" between the two markets; (6) the defendant's good faith in adopting its
> mark; (7) the quality of the defendant's product; and (8) the sophistication of the
> purchasers.

*Id.* (citing *Polaroid*, 287 F.2d at 495). Taken together, these factors weigh strongly in favor of
Plaintiff.

The first factor, the strength of the mark, is assessed according to the "distinctiveness of
the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating
from a particular . . . source." *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d
Cir. 1979). Courts may also look at whether the mark has attained "secondary meaning," i.e., the
extent to which the public has come to identify the mark with a particular product or service.
Plaintiff alleges that "consumers have come to recognize the [DIESEL] mark as a distinctive
symbol of Diesel's goodwill," (Compl. ¶ 2), and that the Diesel "trademarks are distinctive and
are associated in the mind of the public with Diesel," *id.* ¶ 59. Indeed, Defendants' deliberate
copying of Plaintiff's marks provides circumstantial evidence of the strength of those marks and
the high degree of recognition and good will they have with consumers. *See Majestic Drug Co.,
Inc. v. Olla Beauty Supply, Inc.*, No. 97 Civ. 0046, 1997 WL 37955, at *7, *11 (S.D.N.Y. Jan.
31, 1997) (Preska, J.) (citing *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991)).
Accordingly, this factor weighs in favor of Plaintiff.

The second factor, the degree of similarity between the marks, also weighs in favor of
Plaintiff. The degree of similarity is extremely high because Defendants are incorporating exact

copies of Diesel marks into their website domain names, the visual display of those web pages, and the merchandise sold on the Infringing Websites. *See* (Compl. ¶¶ 4, 37, 40, 49).

The third factor, the competitive proximity of the products or services, as well as the fifth factor, likelihood of bridging the gap, weigh in favor of Plaintiff as well. The products here fall into the same general categories—apparel, fashion accessories, luggage, etc.—and Defendants' repeated use of Plaintiff's marks throughout the Infringing Websites shows that they intend to target the same consumers. Although Defendants' products are lower-quality "knock-off" versions of Plaintiff's goods, (Mot. for Default, 2), many of the differences are small enough that, upon first glance, it would take a practiced eye to discern the difference.[4] Defendants have also made deliberate efforts to mimic the appearance of Diesel's authorized online retailers. (Compl. ¶ 40). Accordingly, the markets for the two sets of products are extremely similar.

With respect to the fourth factor, existence of actual confusion, the Complaint does not offer any evidence to support a finding of actual confusion.

The sixth factor, Defendants' good faith, weighs very heavily in favor of Plaintiff. Defendants' exact reproduction of several of Plaintiff's registered marks in combination with its use of Diesel advertising images provides strong evidence of Defendants' bad faith. *Id.* So too do Defendants' attempts to mimic the appearance of authentic Diesel online retailers, and authentic Diesel goods. *Id.* ¶¶ 4-5, 40. Defendants' tactic of cycling through different domain names in order to avoid detection provides further evidence that their use of Plaintiff's marks is in bad faith. *Id.* ¶ 44.

---

[4] The Complaint describes how Diesel's Director of Purchasing and Procurement examined goods purchased from the Infringing Websites and determined them to be counterfeit after her review of "the stitching, hangtags, interior clothing tags, and exterior clothing tags" attached to the counterfeit products. (Compl. ¶ 44-1). Such details would be difficult for an average online consumer to discern.

Courts have treated the seventh factor, the quality of a defendant's product, in two different ways. *See Majestic Drug*, 1997 WL 37955 at *10. Some courts have found this factor weighs in favor of the plaintiff when a defendant's products are of a noticeably different quality from those of the plaintiff. *See, e.g.*, *Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, No. 02 Civ. 0861, 2002 WL 1543817, at *5 (S.D.N.Y. July 12, 2002) (McKenna, J.) (quoting *Proctor & Gamble Co. v. Johnson & Johnson, Inc.*, 485 F. Supp. 1185, 1202 (S.D.N.Y. 1979) (Leval, J.) *aff'd*, 636 F.2d 1203 (2d Cir. 1980)).  However this Court finds more persuasive those cases concluding that a disparity in quality between a plaintiff's and a defendant's products weighs against finding a likelihood of confusion. *See, e.g.*, *Plus Products v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1006 (2d Cir. 1983) ("[T]he marked difference between the quality of plaintiff's and defendants' . . . goods reduces rather than increases the likelihood of confusion."); *Majestic Drug*, 1997 WL 37955 at *10 (finding that the similar quality of goods makes "consumer confusion more likely rather than less likely"). Here, Plaintiff alleges that Defendant's products are lower-quality than authentic Diesel goods. (Mot. for Default, 2) (describing Defendant's products as "inferior knock-off versions of high-end Diesel goods"). Therefore this factor weighs slightly against Plaintiff.

There is no evidence with respect to the final factor, namely the sophistication of purchasers.

Assessing these factors together, the Court concludes that they weigh clearly in favor of Plaintiff, and therefore that Plaintiff has demonstrated a likelihood of consumer confusion.

    b.   *Dilution*

Lanham Act Section 43(c), 15 U.S.C. § 1125(c), governs trademark dilution. It provides that "the owner of a famous mark that is distinctive" has a cause of action against anyone who

9

"at any time after the owner's mark has become famous" uses a mark in commerce in a way "that is *likely* to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1) (emphasis added). [5] In order to prevail on a claim of dilution, Plaintiff must show (1) that its mark is famous and distinctive within the meaning of Lanham Act;[6] (2) use in commerce by the Defendants after Plaintiff's mark became famous; and (3) that Defendants' use is likely to cause dilution of the famous mark. Plaintiff has done so here.

First, Plaintiff alleges that its marks are both famous and distinctive within the meaning of the Section 43 of the Lanham Act. (Compl. ¶¶ 88-91). Diesel's marks have been widely used on merchandise and in advertising across a variety of media, and have gained "widespread publicity and public recognition." *Id.* ¶¶ 89, 91. Diesel's marks have become associated in the minds of consumers with Diesel as a source of high-quality fashion apparel, accessories, and

---

[5] This section was amended by the Trademark Dilution Revision Act in 2006. Previously a plaintiff needed to show actual dilution, but following the amendment, a plaintiff needs to show only that the defendant's conduct is "*likely* to cause dilution . . . regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 202 (2d Cir. 2013).

[6] A trademark is distinctive if either (a) it is inherently distinctive, or (b) it has acquired secondary meaning. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012). A mark is inherently distinctive if it is either suggestive, arbitrary, or fanciful, *see Abercrombie*, 537 F.2d at 10-11, which means that its "intrinsic nature serves to identify [it as] a particular source of a product," *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A mark that is not inherently distinctive may nonetheless become distinctive if it has acquired "secondary meaning," i.e., it serves in the minds of the public to identify the source of the product. *Id.* at 769.

Lanham Act Section 43(c)(2)(A) states that a "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
   (i)   The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
   (ii)  The amount, volume, and geographic extent of sales of goods or services offered under the mark.
   (iii) The extent of actual recognition of the mark.
   (iv)  Whether the mark was registered under the act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."
15 U.S.C. § 1125(c)(2)(A).

associated goods. *Id.* ¶¶ 2, 13-14. These allegations are sufficient to establish that Diesel's marks are both famous and distinctive.

Second, the Court has already determined that the Complaint sufficiently alleges that Defendants have used Plaintiff's marks in commerce, and have done so without Plaintiff's consent. *See infra*, Part II(A)(1)(a)(ii). The Complaint also states that Defendants' use occurred after the Diesel trademarks had become famous. (Compl. ¶ 90).

Finally, the Complaint sufficiently alleges that Defendants' use is likely to cause dilution by blurring of Plaintiff's marks. *Id.* ¶ 96. Dilution by blurring occurs when there is an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). In assessing the likelihood of dilution, courts may consider a number of statutory factors, including (i) the degree of similarity between the marks; (ii) the degree of inherent or acquired distinctiveness of the famous mark; (iii) the extent to which the owner of the famous mark is engaging in substantially exclusive use thereof; (iv) the degree of recognition of the famous mark; (v) whether the user of the allegedly diluting mark intended to create an association with the famous mark; and (vi) any actual association between the marks. *Id.* Here Defendants have copied a number of Plaintiff's marks exactly and incorporated those marks into their merchandise, their web pages, and their website domain names. (Compl. ¶¶ 4-5). Diesel's marks are widely recognized and famous, *id.* ¶¶ 90-91. Given this wide recognition, and the Defendants' use of exact copies of Plaintiff's marks, it is reasonable to infer that Defendants' use of these marks was deliberately intended to suggest an association with Diesel and confuse potential consumers as to the source and authenticity of their goods, *id.* ¶¶ 4, 96. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 536 (S.D.N.Y. 2011) (Sweet, J.) (finding intent to cause confusion when a

11

defendant has prior knowledge of the plaintiff's mark(s) and the similarities between the marks are so close as to infer copying); *Grout Shield Distributors, LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 416-17 (E.D.N.Y. 2011); *Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliance Services, Inc.*, No. 13 Civ. 2548, 2014 WL 1303434, at *4 (S.D.N.Y. Apr. 1, 2014) (Wood, J.) (finding that the use of plaintiff's "exact word mark and logo indicates bad faith").[7]

Accordingly, Plaintiff has established a claim for trademark dilution under the Lanham Act.

2. <u>Cybersquatting Claims</u>

The Anticybersquatting Consumer Protection Act (ACPA) provides a civil remedy for the owner of a protected mark against anyone who, with "a bad faith intent to profit from that mark," registers, traffics in, or uses a domain name that is "identical or confusingly similar to or dilutive of" a mark that is famous at the time the domain name is registered. 15 U.S.C. § 1125(d)(1)(A)(i)-(ii)(II). Accordingly, in order to prevail under this provision, Plaintiff must show (1) ownership of a famous protected mark,[8] (2) bad faith, and (3) that the domain name is identical or confusingly similar to or dilutive of Plaintiff's mark(s). *See Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497-99 (2d Cir. 2000). Plaintiff has done so here.

First, Plaintiff has shown that it is the owner of the Diesel word mark, (Compl. ¶ 10), and that this mark was famous at the time that Defendants registered the infringing domain names which incorporate Plaintiff's mark, *id.* ¶¶ 18, 41, 72. Second, the Complaint sufficiently alleges bad faith on the part of Defendants. In assessing bad faith for purposes of ACPA, courts may

---

[7] In this Circuit, intent to create confusion constitutes bad faith. *See EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos, Inc.*, 228 F.3d 56, 66 (2d Cir. 2000); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 97 (2d Cir. 2009).

[8] ACPA applies regardless of whether a mark is registered or unregistered, so long as it is famous or distinctive.

consider the non-exclusive list of statutory factors outlined in 15 U.S.C. § 1125(d)(1)(B).[9] A

number of these factors weigh in favor of the Plaintiff. First, the Defendants are not making

noncommercial or fair use of the mark, but rather are using the mark in connection with the sale

of goods. (Compl. ¶ 5). Second, Plaintiff's "Diesel" word mark is distinctive and famous. *Id.* ¶¶

41, 72. Third, Defendants have registered multiple domain names that are identical or

confusingly similar to Plaintiff's protected mark; Diesel has identified nearly one hundred

domain names registered to Defendants that incorporate Plaintiff's registered word mark

"Diesel." (Compl. ¶¶ 18, 41). Fourth, for reasons discussed previously, it is reasonable to infer

that the Defendants intended to divert customers by creating a likelihood of confusion as to the

source or affiliation of the site. This conclusion is bolstered by the fact that all but three of the

domain names registered by Defendants include the word "jeans" alongside the "Diesel" word

mark, making reference to one of Diesel's most widely-known products. *Id.*; *cf. ABC Rug &*

*Carpet Cleaning Service, Inc. v. ABC Rug Cleaners, Inc.*, No. 08 Civ. 5737, 2010 WL 10091076,

---

[9] The full list of factors enumerated in the statute is:

(1) the trademark of other intellectual property rights of the [domain name registrant], if any, in the domain name;

(2) the extent to which the domain name consists of the legal name of the [registrant] or a name that is otherwise commonly used to identify that person;

(3) the [registrant's] prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(4) the [registrant's] bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(5) the [registrant's] intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(6) the [registrant's] offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services . . . ;

(7) the [registrant's] provision of material and misleading false contact information when applying for the registration of the domain name . . . ;

(8) the [registrant's] registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to . . . or dilutive of famous marks of others . . . ; and

(9) the extent to which the mark incorporated in the [registrant's] domain name registration is or is not distinctive and famous.

15 U.S.C. § 1125(d)(1)(B)(i).

at \*26 (S.D.N.Y. Feb. 10, 2010) (Berman, J.) (finding domain names confusingly similar to plaintiff's mark because they incorporated the plaintiff's word mark and included words suggesting a similar line of business, and because the content of the webpages incorporated logos nearly identical to the plaintiff's logos); *Mattel, Inc. v. Internet Dimensions Inc.*, No. 99 Civ. 10066, 2000 WL 973745, at \*4-5 (S.D.N.Y. Jul 13, 2000) (Baer, J.) (finding intent to divert consumers when defendants' domain name combined the plaintiff's mark, "Barbie," with the word "play" which might be entered by search engine users seeking to find toys manufactured by the plaintiff). Given the strength of these factors and the absence of information relevant to other factors that might weigh in favor of Defendants, the Court concludes that Defendants acted in bad faith with an intent to profit therefrom.

Finally, the Complaint sufficiently alleges that the domain names are confusingly similar or identical to, and dilutive of, Plaintiff's famous mark. Although many of the domain names incorporate additional phrases or words alongside Plaintiff's "Diesel" word mark and thus are not identical to Plaintiff's mark,[10] the Court finds that they are sufficiently similar to confuse consumers as to whether the Infringing Websites are affiliated with Diesel and to dilute the strength of the Diesel mark.

Therefore, the Court concludes that Plaintiff's allegations sufficiently establish a cybersquatting claim under ACPA.

3.  <u>State Law Claims</u>

    a. *Dilution*

In addition to its Lanham Act dilution claim, Plaintiff also alleges dilution under New York General Business Law, § 360-l. New York's law is similar to the federal provision on

---

[10] For example, "thedieseljeansusa.com", "dieseljeansboutique.com", "dieseljeansmen.net", and "the classicdieseljeans.com." (Compl. ¶ 18).

dilution, but it does not required that a mark be famous in order to receive protection. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009). To prevail, Plaintiff must show (1) that it possesses a distinctive mark, and (2) a likelihood of dilution. *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) (Koetl, J.). Under New York law, courts look to six factors to determine the likelihood of dilution: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark. *New York Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002). Unlike federal law, New York law recognizes a dilution claim only when the marks are "substantially similar." *Starbucks*, 588 F.3d at 114. Substantial similarity is shown when marks are "similar enough that a substantial segment of the target group of customers sees the two marks as essentially the same." *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 595 (S.D.N.Y. 2009) (Holwell, J.) (quoting 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:117 (4th ed. 2004)).

Diesel's allegations sufficiently establish a dilution claim under New York's General Business law.

First, the Court has already determined that Plaintiff has satisfied the more rigorous standard under the Lanham Act of showing that its marks are famous. *See infra*, Part II(A)(1)(b). Therefore Plaintiff has also shown that its marks are distinctive for the purpose of its state law dilution claim. *See George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 651 (S.D.N.Y. 2014) (Baylson, J.).

Second, Plaintiff has shown a likelihood of dilution based on the factors outlined above. Defendants are using *exact copies* of Plaintiff's marks on the Infringing Websites and on their

merchandise, which satisfies the requirement of substantial similarity. (Compl. ¶ 16).

Additionally, the products sold by Defendants are, by design, extremely similar to those sold by

Plaintiff. *See id.* ¶¶ 16, 42-43. Because Defendants' merchandise and the Infringing Websites so

closely mimic the appearance of authentic Diesel products and online retailers, the Court finds it

reasonable to infer that Defendants acted with predatory intent.[11] *Id.*  ¶¶ 4, 41. Finally, Plaintiff

has shown the renown and widespread recognition of its marks. *Id.* ¶¶ 13-14. Taken together,

these factors demonstrate a likelihood of dilution.

### b.  *Deceptive Acts and Practices*

Plaintiff alleges that Defendants violated New York General Business Law § 349,

governing deceptive acts and practices, and § 350, governing false advertising. To state a claim

under either § 349 or § 350, Plaintiff must show (1) "that the challenged act or practice was

consumer-oriented"; (2) "that it was misleading in a material way"; and (3) "that the plaintiff

suffered injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758

F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000));

*Kaplan*, 16 F. Supp. 3d at 352.

In the Second Circuit, a majority of courts have held that trademark infringement claims

are not cognizable under § 349 and § 350 "unless there is a specific and substantial injury to the

public interest over and above the ordinary trademark infringement." *A.V.E.L.A., Inc. v. Estate of

Marilyn Monroe, LLC*, No. 12 Civ. 4828, 2015 WL 5507147, at *18 (S.D.N.Y. Sept. 18, 2015)

(Failla, J.) (quoting *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 305 (E.D.N.Y. 2014)); *see also*

---

[11] Predatory intent exists when a user "adopt[s] its mark hoping to benefit commercially from association with [a] senior mark" that is better known. *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1037 (2d Cir. 1989). Given that Defendants have used exact copies of Diesel's marks both on their products and on their web interfaces, the Court finds it reasonable to infer that Defendants made use of these marks with the intent to benefit commercially from the apparent association with Diesel.

*Kaplan*, 16 F. Supp. 3d at 352. Where the "alleged deceptive acts and practices . . . are precisely

the acts that constitute the alleged trademark infringement," a claim under § 349 or § 350 fails as

a matter of law. *Kaplan*, 16 F. Supp. 3d at 352-53; *see also A.V.E.L.A.*, 2015 WL 5507147, at

*18 (holding that a plaintiff failed to state a claim under § 349 based on actions that created

confusion as to the source of goods or falsely suggested an association with the plaintiff).

Here Plaintiff has alleged deceptive acts and practices by Defendants that are co-

extensive with those actions that constitute trademark infringement. (Compl. ¶¶ 107-113). For

this reason, Plaintiff's claims under § 349 and § 350 fail as a matter of law.

### c.   *Common Law Trademark Infringement and Unfair Competition*

Finally, Plaintiff asserts claims for both trademark infringement and unfair competition

under New York common law. "[T]he elements necessary to prevail on causes of action for

trademark infringement and unfair competition under New York common law mirror the

Lanham Act claims." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456

(S.D.N.Y. 2005) (Connor, J.) (internal citations and quotation marks omitted).

The Court has already concluded that Plaintiff sufficiently alleges the elements of a

federal trademark infringement claim under the Lanham Act. Therefore, these allegations also

establish a claim of trademark infringement under New York common law. *See, e.g.*, *GTFM, Inc.*

*v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 300-01 (S.D.N.Y. 2002) (Cote, J.) (finding that

because plaintiff had established a Lanham Act trademark infringement claim, plaintiff had also

established a common law claim for trademark infringement under New York law).

For a claim of common law unfair competition, Plaintiff must show a likelihood of

confusion, as required under the Lanham Act, as well as bad faith by Defendants. *See Lopez v.*

*Gap, Inc.*, 883 F. Supp. 2d 400, 430 (S.D.N.Y. 2012) (Engelmayer, J.); *Lorillard Tobacco*, 378

F. Supp. 2d at 456. "Under New York law, a presumption of bad faith attaches to the use of a counterfeit mark." *Phillip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004) (Baer, J.) (citing *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1227 (2d Cir. 1987)). Defendants have used counterfeit versions of several of Plaintiff's protected trademarks both on the Infringing Websites and on their counterfeit goods. (Compl. ¶ 16). For this reason, as well as those discussed previously, Plaintiff has shown that Defendants acted in bad faith. Plaintiff has also demonstrated that Defendants' conduct creates a likelihood of confusion, for reasons outlined previously, and therefore has established its claim based on common law unfair competition.

    B. *Relief*

       1. <u>Permanent Injunction</u>

    The Lanham Act grants district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. In order to secure a permanent injunction, a plaintiff must demonstrate success on the merits, and that (1) plaintiff is "likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate for the injury; (3) the balance of hardships tips in [plaintiff's] favor; and (4) the public interest would not be disserved by the issuance of a [permanent injunction]." *U.S. Polo Ass'n*, 800 F. Supp. 2d at 539 (internal citations and quotations omitted) (finding that the standard for an injunction articulated in *eBay v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) applies in the context of trademark infringement).

a. *Success on the Merits*

Diesel has established success on the merits because Defendants' default constitutes an admission of liability. *Gucci Am., Inc. v. Tyrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (Sullivan, J.).

b. *Irreparable Injury*

"In a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987) (internal citation and quotation marks omitted); *Tyrell-Miller*, 678 F. Supp.2d at 120. As discussed above, Diesel alleges facts sufficient to show a likelihood of consumer confusion and has therefore also established irreparable injury.

c. *Inadequate Legal Remedies*

In the trademark context, monetary damages are often inadequate to compensate a plaintiff for its injuries "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable." *NYP Holdings v. New York Post Publ. Inc.*, 63 F. Supp. 3d 328, 342 (S.D.N.Y. 2014) (Marrero, J.) (quoting *U.S. Polo Ass'n*, 800 F. Supp. 2d at 541). Furthermore, a defendant's default gives rise to an inference that defendant may continue its infringing conduct. *Pearson Educ., Inc. v. Vergara*, No. 09 Civ. 6832, 2010 WL 3744033, at *4 (S.D.N.Y., Sept. 27, 2010) (Fox, Mag. J.). Legal remedies are therefore inadequate to protect Diesel.

d. *Balance of Hardships*

The balance of hardships weighs strongly in favor of Diesel. Diesel has spent decades establishing the good will and reputation for quality associated with its registered trademarks.

(Compl. ¶ 2). Because of Defendants' conduct, Diesel faces irreparable and ongoing harm to its legitimate business associated with those marks. *See NYP Holdings*, 63 F. Supp. 3d at 342. In contrast, Defendants have defaulted in this case and thereby failed to allege any hardship at all.

> e.   *Public Interest*

Finally, in the context of trademark infringement and counterfeit goods, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (McMahon, J.); *U.S. Polo Ass'n*, 800 F. Supp.2d at 541 ("The consuming public has a protectable interest in being free from confusion, deception and mistake."). As discussed previously, Diesel has demonstrated a likelihood of consumer confusion with respect to the source and quality of the goods Defendants sell, therefore the public interest weighs in favor of issuing an injunction.

Because each of these elements weighs in favor of Plaintiff, a permanent injunction is GRANTED, as specified in the Conclusion to this Opinion and Order.

> 2.   Destruction of Infringing Merchandise

Pursuant to 15 U.S.C. § 1118, Diesel seeks an order requiring Defendants to "deliver up for destruction to Diesel all unauthorized products, advertisements, and packaging in their possession" that bear "any of the Diesel trademarks or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof." (Compl. ¶ 126).

In the context of a default judgment, a court lacks any assurance that the defendant will comply with the terms of an injunction. *Sola Franchise Corp. v. Solo Salon Studios, Inc.*, No. 14-CV-0946, 2015 WL 1299259, at *20 (E.D.N.Y. Mar. 23, 2015). Therefore, when a defendant has defaulted, an order pursuant to § 1118 may be issued in addition to a permanent injunction when

necessary to protect plaintiff's interests. *See id.* (issuing both a permanent injunction and an order for destruction pursuant to § 1118 when defendant defaulted); *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258, 2014 WL 4638844, at *14 (E.D.N.Y. Sept. 16, 2014) (same); *U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc.*, No. 12 Civ. 8753, 2013 WL 5363777, at *6 (S.D.N.Y. Sept. 26, 2013) (Gorenstein, Mag. J.) *report and recommendation adopted*, No. 12 Civ. 8753, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013) (Koetl, J.) (same).

Because the Defendants have failed to appear in this action, and because this Court has no assurance that Defendants will comply with the terms of the permanent injunction, the Court orders Defendants to deliver to Plaintiff for destruction all unauthorized products, advertisements, and packaging that bear any of Plaintiff's trademarks or colorable imitations thereof, as well as any plates, molds, or other means of producing such trademarks or imitations.

3. Damages and Attorney's Fees

When a defendant's violation of Lanham Act Section 43(a) or 43(c) involves the use of a counterfeit mark, the plaintiff may elect to receive an award of statutory damages rather than actual damages and profits.[12] 15 U.S.C. § 1117(c). Such damages are to be not less than $1,000 and not more than $200,000 per counterfeit mark per type of goods sold. In the case of willful infringement, this limit is increased and a court may award up to $2 million per counterfeit mark per type of goods sold. *Id.* Additionally, a plaintiff may elect statutory damages for willful violations of ACPA. 15 U.S.C. § 1117(d). Such damages are to be not less than $1,000 and not more than $100,000 per domain name. *Id.* Finally, the Court may award reasonable attorney's fees and costs in "exceptional cases" under 15 U.S.C. § 1117(a). "Willful infringement is an

---

[12] For the purposes of this provision, a counterfeit mark is one that falls within the definition specified in 15 U.S.C. § 1116(d)(1)(B).

exceptional circumstance warranting the award of attorney's fees." *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (Batts, J.) (citing *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)).

Plaintiff has successfully shown that Defendants' conduct was willful and involved counterfeit marks. The Complaint alleges that Defendants replicated the appearance of both Diesel's products and its authorized online retailers in a deliberate attempt to confuse consumers into believing the merchandise offered on the Infringing Websites was authentic. *See* (Mot. for Default, 4). "In addition, willfulness is demonstrated by the elaborate scheme the Defendants have employed to shield their infringing conduct from detection." *Id.*; *see also* (Compl. ¶ 44). Defendants' default also gives rise to an inference of willfulness. *See, e.g. Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) (Maas, Mag. J.); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (Marrero, J.).

The Court, in its discretion, is permitted to award enhanced statutory damages of up to $2 million per counterfeit mark per type of goods sold, statutory damages for Defendants' violations of ACPA, and attorney's fees and costs. Plaintiff calculates that the maximum total award from all nine Defendants in this case would therefore be $64.3 million, before adding Plaintiff's attorney's fees and costs. (Mot. for Default, 9-10). However, Plaintiff asks the Court to award a total amount of $18 million—$2 million per Defendant—because of the difficulties in calculating how many marks have been infringed by each Defendant in connection with how many different types of goods. *Id.* at 10. This lump sum amount would also encompass Plaintiff's attorney's fees and costs associated with this action. *Id.* (citing *Victorinox AG v. U.S. Flash & Technologies LLC*, No. 09 Civ. 9266, 2010 WL 5691991, at *4 (S.D.N.Y. Oct. 21,

2010) (Maas, Mag. J.) (awarding a lump sum encompassing both statutory damages and attorney's fees and costs)).

In determining the appropriate amount of statutory damages, a district court is "only limited by what the court considers just." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (Marrero, J.) (internal citation and quotations omitted). Because the trademark statute does not provide guidelines for courts to consider in assessing statutory damages, "courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583-84 (E.D. Pa. 2002); *see also Gucci Am., Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438, 2008 WL 512789, at *5 (S.D.N.Y. Feb. 26, 2008) (Koetl, J.) (adopting report and recommendation from Magistrate Judge Eaton).

Courts in this Circuit have taken various approaches in determining the appropriate amount of statutory damages. In cases involving a number of different marks and/or a number of different types of merchandise, many judges have either (1) awarded the statutory maximum but without multiplication for different marks or different types of goods; or (2) awarded values well below the maximum available but multiplied that amount for each mark and type of goods. *See MyReplicaHandbag.com*, 2008 WL 512789, at *5. Because the Court does not have clear information regarding either the number of different types of goods involved or the number of marks infringed in relation to each type of good, a lump sum award is most appropriate in this case. *See Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002) (Peck, Mag. J.) (awarding the maximum statutory damage amount without multiplication for multiple marks); *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No.

12 Civ. 9190, 2013 WL 6481354, at *4 (S.D.N.Y. Dec. 3, 2013) (Peck, Mag. J.) *report and recommendation adopted*, No. 12 Civ. 9190, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014) (Daniels, J.) (determining that "one large lump sum, rather than an award comprised of a lesser per-mark/type amount for multiple marks or types of goods, is appropriate" where it was not clear from the record how many marks were counterfeited on how many types of goods).

Accordingly, the Court believes a total award of $2 million—encompassing statutory damages, damages under ACPA, and attorney's fees and costs—is appropriate in this case. This amount represents the statutory maximum amount of $2 million without multiplication for different marks and different types of goods. This figure is also in line with amounts that courts in this Circuit have awarded in similar circumstances. *See, e.g.*, *Brown*, 2002 WL 1226863, at *2 (awarding then statutory-maximum of $1 million in a default judgment against one known defendant who infringed numerous marks); *MyReplicaHandbag.com*, 2008 WL 512789, at *5 (awarding a total of $4.3 million to three distinct plaintiffs in a default judgment against five anonymous defendants who infringed fourteen different marks in connection with at six types of goods); *Lane Crawford LLC*, 2013 WL 6481354, at *5 (awarding $1 million in default judgment against multiple defendants who infringed two different marks). This amount is sufficient to compensate Diesel and to deter future infringement.

Although Plaintiff requests that the Court award $2 million per John Doe defendant, for a total of $18 million, Plaintiff does not provide sufficient information in its filings to demonstrate clearly that there are nine distinct defendants, each of whom has engaged in conduct sufficiently egregious to warrant the statutory maximum penalty. The affidavit describing OpSec's investigation into the Infringing Websites does not explain how OpSec grouped the Infringing Websites into the nine distinct families it has identified, or how it determined that there were

nine separate John Does involved in the infringing activities. *See* (Compl. at Ex. 2). In the absence of better information about the number of Defendants involved in this activity, the Court concludes that it is not appropriate to multiply the statutory maximum amount of $2 million by nine. *See, e.g.*, *Lane Crawford LLC*, 2013 WL 64813545, at *5 (noting that "[w]hile defendants . . . should not benefit from their failure to provide information about their profits or otherwise participate in this action, neither should [plaintiff] reap a windfall" when information supporting an extremely large award is lacking).

### III.    CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for entry of default judgment with respect to its claim of deceptive acts and practices under New York General Business Law, §§349-350 (Claim 7 of the Complaint, ¶¶ 107-113). The Court GRANTS Plaintiff's motion for entry of default judgment with respect to all other claims in the Complaint. The Court further GRANTS Plaintiff's request for a permanent injunction as set forth below as well as Plaintiff's request for an order requiring Defendants to deliver to Plaintiff for destruction any infringing products, advertisements, and packaging. The Court awards Plaintiff a lump sum of $2 million, which encompasses statutory damages and attorney's fees and costs.

Defendants John Does 1-9 and their agents are permanently enjoined from:

(1) using any Diesel trademark (as listed in ¶ 10 of the Complaint) or any reproduction, counterfeit, copy, or colorable imitation thereof in connection with any sale or advertisement of goods or their packaging not authorized by Diesel;

(2) manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying any products or packaging not authorized

by Diesel that bear the Diesel trademark or any reproduction, counterfeit, copy, or colorable imitation thereof;

(3) using any false description, representation, or designation of origin, or making any statements or performing any act tending to falsely describe or represent Defendants' unauthorized goods as being those of Diesel, or sponsored by or associated with Diesel, or to falsely suggest that such goods are sold, manufactured, licensed, sponsored, approved, or authorized by Diesel;

(4) engaging in acts that constitute trademark infringement, counterfeiting, dilution, false designation of origin, cybersquatting, or unfair competition under the laws of the United States and the State of New York and that would damage or injure Plaintiff's business reputation or damage or dilute the value of Plaintiff's trademarks;

(5) destroying, altering, removing, or secreting any unauthorized products that infringe or dilute Diesel's trademarks, or any books or records pertaining to such products, or to the importation, manufacture, production, distribution, sale, marketing, promotion, or display thereof; and

(6) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Order.

Defendants are ordered to take all actions necessary to transfer to Plaintiff or cancel, at Plaintiff's election, all domain names of the Infringing Websites and any other domain names used by Defendants to engage in counterfeit activities that infringe Plaintiff's trademarks, and all internet service providers and internet registries shall take any actions necessary to effectuate either the transfer or disabling of the Infringing Websites.

Defendants are further ordered to deliver to Plaintiff for destruction any and all products, advertisements, and packaging in their possession or under their control that use in commerce any of the Diesel trademarks or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, as well as all plates, molds, matrices, and other means of production of the same.

The Clerk of the Court is directed to close this case. Any pending motions are moot.

SO ORDERED.

DATED:      New York, New York
            January 8, 2016

                                    _____/s/_____
                                         KIMBA M. WOOD
                                    United States District Judge